**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:

**DM & KC, LLC,**

(Chapter 7 Case)
Debtor. No. 25-11224-j7

---

## CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY KING CAPITAL AS REAL ESTATE BROKER FOR THE ESTATE

Edward A. Mazel, the Chapter 7 trustee (the "Trustee") of the above-captioned bankruptcy estate, pursuant to 11 U.S.C. § 327(a), requests that the Court approve his employment of King Capital ("King Capital" or "Broker"), through its principal David Fite ("Fite"), as the Trustee's real estate broker in this case to market and sell certain real property of the estate. In support of this Application, the Trustee states:

1. **Procedural Status of the Case.** On October 2, 2025 (the "Petition Date"), DM & KC, LLC (the "Debtor") commenced the above-captioned case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Edward A. Mazel was appointed the Chapter 7 trustee for this case and continues to serve in that capacity.

2. **The Property.** The Debtor's bankruptcy estate includes real property legally described as Lot 2a, 2b, and 3a, Replat No. 1 of Replat of Lots 1 and 2, Rollie Subdivision, Unit 4, and Tract 2 Rollie Addition No. 5, commonly known as 1000 W. Jefferson, 1200 W. Jefferson, and 1030 N. Hwy 491, Gallup, New Mexico 87301 (the "Property"). The Debtor scheduled the Property at a value of $6,500,000.00.

3. **Need for a Broker.** The Property is the primary asset of the estate. The Trustee has determined that employment of a qualified real estate broker is necessary to maximize the

value of the Property for the benefit of the estate and its creditors. The Trustee requires the services of a broker with experience in marketing and selling commercial real property in the Gallup, New Mexico area and surrounding region.

4. **Selection of King Capital.** The Trustee wishes to employ King Capital, through its principal David Fite, as the Trustee's real estate broker to market and sell the Property. The Trustee has selected King Capital based on its experience and qualifications in selling commercial real property. David Fite is a licensed real estate broker in the State of New Mexico, License No. 20557.

5. **Services to Be Rendered.** If the Court approves this Application, King Capital's services will include, but not be limited to:

(a) Marketing the Property through commercially reasonable methods, including listing services, advertising, and direct outreach to prospective purchasers;

(b) Identifying, communicating with, and qualifying prospective purchasers;

(c) Assisting the Trustee in negotiating the terms and conditions of any sale of the Property;

(d) Cooperating with any buyer's broker or agent in connection with the sale; and

(e) Performing such other services as are customarily provided by real estate brokers in connection with the sale of commercial real property.

6. **Terms of Employment.** The terms and conditions of King Capital's employment are fully set forth in the Listing Agreement, a copy of which is attached hereto as **Exhibit A**. The material terms include the following:

(a) King Capital will receive a commission of six percent (6%) of the gross sale price of the Property, to be split with any cooperating broker, if applicable;

(b) The commission will be paid from the proceeds of the sale at closing, subject to Court approval; and

(c) The Listing Agreement will remain in effect for a term as set forth in Exhibit A, subject to earlier termination by the Trustee.

7. **Disinterestedness.** To the best of the Trustee's knowledge, information, and belief, King Capital and David Fite do not hold or represent any interest adverse to the estate, and are disinterested persons as defined in 11 U.S.C. § 101(14). King Capital has no connection with the Trustee, the Debtor, the Debtor's creditors, or any other party in interest or their respective attorneys, other than any connections set out in the Disclosure filed concurrently herewith as **Exhibit B**.

8. **Best Interest of the Estate.** The Trustee's employment of King Capital is in the best interest of the estate. The Property is a significant asset that requires professional marketing and brokerage services to maximize its sale price. The commission structure is consistent with customary rates for the sale of commercial property in the relevant market.

9. As of the date of this Application, the Trustee has not paid King Capital any amounts in connection with this case.

10. The Trustee requests that King Capital's employment be made effective as of the date this Application is filed.

11. All fees and commissions are subject to the ultimate approval of the Bankruptcy Court under Bankruptcy Code §§ 328 and 330.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order: (a) approving the employment of King Capital (David Fite) as real estate broker for the estate in

accordance with the terms and conditions set forth herein and in the attached Listing Agreement; and (b) granting such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED this 6th day of April, 2026.

By: /s/ Stuart B. Rodgers
Stuart B. Rodgers - 163596
Nach, Rodgers, Hilkert & Santilli
1220 East Osborn Rd., Ste. 101
Phoenix, AZ 85014
Email: stuart.rodgers@nrhslaw.com
(602) 258-6000; FAX: (602) 258-6003
*Counsel for Trustee*

**CHAPTER 7 TRUSTEE**

By: /s/ Edward Alexander Mazel
Edward Alexander Mazel
Trustee

---

**CERTIFICATE OF SERVICE**

A COPY of the foregoing delivered via U.S. Mail and via electronic Court Notification to:

DM & KC, LLC
1000 W. Washington Ave.
Gallup, NM 87301
*Debtor*

Marcus Sedillo
Gatton & Associates, P.C.
10400 Academy NE, Suite 350
Albuquerque, NM 87111
Email: marcus@gattonlaw.com
*Counsel for Debtor*

Mary L. Johnson
Office of the U.S. Trustee
P.O. Box 608
Albuquerque, NM 87103-0608
Email: mary.l.johnson@usdoj.gov

Prins Bank
508 3rd St
Prinsburg, MN 56281-3700
*First Lienholder*

Jennings, Haug, Keleher, LLP
Attn: Deron B. Knoner
201 3rd St NW #1200
Albuquerque, NM 87102-3382
*Counsel for Prins Bank*

World Business Lenders
PO Box 479
Elmsford, NY 10523-0479
*Second Lienholder*

This certifies that on April 6, 2026, a copy of the foregoing pleading was served by the Bankruptcy Court's electronic filing system on all parties who have entered an appearance in this case.

*/s/ Kay Lucas*________________

# EXHIBIT "A"

# Broker Duties Disclosure and Acknowledgement Form

## The New Mexico Real Estate Commission Rules provide that:

Brokers owe specific broker duties to prospective buyers, sellers, landlords (owners), tenants as set forth in this Part 16.61.19.8. Brokers shall disclose the applicable set of broker duties owed to buyers, sellers, landlords (owners) of rental property and tenants as set forth in this Part 16.61.19.8 prior to the time the broker generates or presents any written document to that party that has the potential to become an express written agreement and obtain from that applicable party written acknowledgement that the broker has made such disclosures. In the case of prospective buyers, sellers, landlord (owners) and tenants to whom the broker is not directly providing real estate services, such disclosure and acknowledgment of receipt shall be made through the broker who is directly providing real estate services to that buyer, seller, landlord (owner) or tenant. Brokers who do not have access to forms by virtue of membership in a Realtor organization may use this form to fulfill the obligations of the Commission Rule on broker duties disclosure.

A. Brokers owe the following duties to prospective buyers, sellers, landlords (owners) and tenants:
    a. Honesty and reasonable care and ethical and professional conduct;
    b. Compliance with local, state, and federal fair housing and antidiscrimination laws, the New Mexico real estate license law and the Real Estate Commission rules, the New Mexico Uniform Owner Resident Relations Act, and other applicable local, state, and federal laws and regulations;
    c. Performance of any and all written agreements made with the prospective buyer, seller, landlord (owner) or tenant;
    d. Written disclosure of any potential conflict of interest that the broker has in the transaction including but not limited to:
        i. Any written brokerage relationship the broker has with any other parties to the transaction or;
        ii. Any material interest or relationship of a business, personal, or family nature that the broker has in the transaction;
    e. Written disclosure of any adverse material facts actually known by the associate broker or qualifying broker about the property or the transaction, or about the financial ability of the parties to the transaction to complete the transaction; adverse material facts requiring disclosure do not include any information covered by federal fair housing laws or the New Mexico Human Rights Act.

B. In addition to the broker duties owed to prospective buyers, sellers, landlords (owners) and tenants as set forth in this Section 16.61.19.8(A), Brokers owe the following Broker

Duties to the buyers, sellers, landlord (owners) and tenants to whom the broker is directly providing real estate services, regardless of the scope and nature of those services; Brokers working as Property Managers for a landlord (owner) are directly providing real estate services to the landlord (owner), not to the tenant:

a. Assistance to the party in completing the transaction, unless otherwise agreed to in writing by the party to whom the broker is directly providing real estate services, including:
    i. Timely presentation of and response to all offers or counter-offers; and
    ii. Active participation in assisting in complying with the terms and conditions of the contract and with the finalization of the transaction;
    iii. If the broker in the transaction is not providing the service, advice or assistance described in Paragraphs (a) and (b) of this Subsection B of 16.61.19.8 NMAC, the party must agree in writing that the broker is not expected to provide such service, advice or assistance.
b. Acknowledgement by the broker that there may be matters related to the transaction that are outside the broker's knowledge or expertise and that the broker will suggest that the party seek expert advice on these matters;
c. Advice to consult with an attorney regarding the effectiveness, validity or consequences of any written document generated by the brokerage or presented to the party and that has the potential to become an express written agreement.
d. Prompt accounting for all money or property received by the broker;
e. Maintenance of any confidential information learned in the course of any prior agency relationship unless the disclosure is with the former principal's written consent or is required by law;
f. Written disclosure of brokerage relationship options available in New Mexico;

C. Unless otherwise authorized in writing, a broker who is directly providing real estate services to a seller/owner shall not disclose the following to the buyer/tenant in a transaction:
    a. That the seller/owner has previously indicated they will accept a sales/lease price less than the asking or listed price of a property;
    b. That the seller/owner will agree to financing terms other than those offered;
    c. The seller/owner's motivations for selling/leasing; or
    d. Any other information the seller/owner has requested in writing remain confidential, unless disclosure is required by law;

D. Unless otherwise authorized in writing, a broker who is directly providing real estate services to a buyer/tenant shall not disclose the following to the seller/owner in the transaction:
    a. That the buyer/tenant has previously indicated they will pay a price greater than the price submitted in a written offer;
    b. The buyer/tenant's motivation for buying/leasing; or

c. Any other information the buyer has requested in writing remain confidential, unless disclosure is required by law.
d. In the event the broker is working for the landlord (owner) as a residential property manager, the broker additionally owes to the landlord (owner) all duties owed under the law of agency.

16.61.19.9. Brokerage relationships

Brokerages working with consumers either as customers or clients may do so through a variety of brokerage relationships. These relationships include but are not limited to a transaction broker relationship, an exclusive agency relationship or a dual agency relationship. For all regulated real estate transactions, a customer or client may enter into an express written agreement to become a client of a brokerage without creating an agency relationship, and no agency duties will be imposed.

A. Transaction broker: a qualifying broker, associate broker or brokerage that provides real estate services without entering into an agency relationship. The transaction broker relationship is a non-fiduciary relationship.
B. Exclusive agency: an express written agreement between a person and a brokerage wherein the brokerage agrees to exclusively represent as an agent the interests of the person in a real estate transaction. Such agreements include buyer agency, seller agency, designated agency, and sub-agency agreements.
C. Dual agency: an express written agreement that modifies existing exclusive agency agreements to provide that the brokerage agrees to act as a facilitator in a real estate transaction rather than as an exclusive agent for either party to the transaction.

By signatures below, the parties acknowledge the receipt of BROKER DUTIES and BROKERAGE RELATIONSHIP disclosure.

I hereby acknowledge receipt of the broker duties disclosure by the above-named broker.

Ed A Mazel
_______________________________________________
Customer's (Recipient) Name (Printed)

DocuSigned by:
Ed Mazel
990E507DAAE142A...
_______________________________________________ March 18, 2026 ___________
Customer's (Recipient) Signature Date Time

**EXCLUSIVE SALE LISTING AGREEMENT**

In consideration of the listing of the real property herein after described ("Property") by **King Capital Commercial Real Estate, LLC** ("Broker") and Broker's agreement to use its best efforts to effect a sale, the undersigned ("Owner") hereby grants to Broker the exclusive right to effect a sale of the Property for a period commencing March 10, 2025 and ending September 30, 2026, (the "Term"). This Agreement is subject to approval of the United States Bankruptcy Court for the District of New Mexico (the "Bankruptcy Court") and shall be effective only upon entry of an order approving Broker's employment pursuant to 11 U.S.C. § 327. The sale shall be on terms acceptable to Owner.

The Property is situated in the City of Gallup, County of McKinley, State of New Mexico, is located at and is further described as 1000 W Jefferson, 1200 W Jefferson and 1030 N Hwy 491, Gallup, New Mexico 87301. See attached Exhibit "A**".**

References herein to the Property shall be understood to include portions of the Property.

1. Owner agrees to pay Broker a commission equal to six percent (6%) of the final purchase price plus applicable New Mexico Gross Receipts Tax. This commission shall be earned for services rendered if, during the Term the Property is sold, and is procured by Broker, Owner, or anyone else on terms above stated, or on any other terms agreeable to Owner. This commission shall be paid in full at the close of escrow through escrow, or if there is no escrow then upon recording of the deed. Broker is authorized to cooperate with and share its commission with other licensed real estate brokers, regardless of whether said co-brokers represent prospective purchasers or act as Broker's subagents.

2. Owner further agrees to pay Broker a commission in accordance with paragraph 1 if, within one hundred eighty (180) calendar days after the expiration or termination of the Term, the Property is sold or an option to purchase is granted, or negotiations continue, resume or commence and thereafter continue leading to a sale or grant of an option to any person or entity (including successors, assigns or affiliates) with whom Broker has negotiated (either directly or through a co-broker) or to whom the Property has been submitted prior to the expiration or termination of the Term. Broker is authorized to continue negotiations with such persons or entities. Broker agrees to submit a list of such persons or entities to Owner not later than fifteen (15) calendar days following the expiration or termination of the Term, provided, however, that if a written offer has been submitted to Owner it shall not be necessary to include the persons or entities on the list.

3. Broker is acting as a Transaction Broker, and no agency relationship between Owner and Broker has been created.

4. Owner and Broker agree that the Property will be offered in compliance with all applicable federal, state and local anti-discrimination laws and regulations. Owner acknowledges that Broker may pre-qualify potential buyers and tenants by reviewing loan pre-approvals, financials, and space requirements prior to showing a property to the buyer.

5. Owner agrees to cooperate with Broker in effecting a sale of the Property and immediately to refer to Broker all inquiries of anyone interested in the Property. All negotiations are to be through Broker. Broker is exclusively authorized to advertise the Property and exclusively authorized to place signs on the Property, Broker is also authorized to advertise the Property in other reasonable means if, in Broker's opinion, such would facilitate the sale of the Property. Owner represents that it is the duly appointed Chapter 7 Trustee of the bankruptcy estate that holds an interest in the Property and has the authority to sell the Property pursuant to 11 U.S.C. § 363, subject to Bankruptcy Court approval. Owner and its counsel will be responsible for determining the legal sufficiency of a sale and/or any other documents relating to any transaction contemplated by this Agreement.

6. Owner agrees to disclose to Broker and purchasers any and all information which Owner has regarding present and future zoning and environmental matters affecting the Property and the condition of the Property, including, but not limited to structural, mechanical and soils conditions, the presence and location of asbestos, PCB transformers, other toxic, hazardous or contaminated substances, and underground storage tanks in, on or about the Property. Broker is authorized to disclose any such information to prospective buyers.

7. The Property is property of the bankruptcy estate of DM & KC, LLC, Case No. 25-11224-j7 (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the District of New Mexico. Broker acknowledges that this Agreement and Broker's employment are subject to approval by the Bankruptcy Court pursuant to 11 U.S.C. § 327 and that any sale of the Property is subject to Bankruptcy Court approval pursuant to 11 U.S.C. § 363. Broker agrees to comply with all orders of the Bankruptcy Court and applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

8. [Intentionally Omitted]

9. Any dispute between Owner and Broker relating to this Agreement, the Property, or Owner/Broker's performance hereunder shall be subject to the exclusive jurisdiction of the Bankruptcy Court. The parties hereby consent to the jurisdiction of the Bankruptcy Court for the resolution of any such disputes, including without limitation disputes regarding the payment of commissions. The prevailing party in any such proceeding shall be entitled to recover its reasonable attorney's fees and costs.

10. In the event that Owner lists Property with another broker after the expiration or termination of this Agreement, Owner agrees to provide in the subsequent listing agreement that a commission will not be payable to the new broker with respect to transactions for which Owner remains obligated to pay a commission to Broker as provided for in this Agreement. Owner's failure to do so, however, shall not affect Owner's obligations to Broker as provided for in this Agreement.

11. Each signatory to this Agreement represents and warrants that (s) he has full authority to sign this Agreement on behalf of the party for whom (s)he signs and that this Agreement binds such party.

12. The parties hereto agree to comply with all applicable federal, state and local laws, regulations, codes, ordinances and administrative orders having jurisdiction over the parties, property or the subject matter of this Agreement, including, but not limited to, the 1968 Civil Rights Act and all amendments thereto, the Foreign Investment in Real Property Tax Act, the Comprehensive Environmental Response Compensation and Liability Act, and the Americans with Disabilities Act.

13. In the event Owner fails to make payments within the time limits set forth herein, from the date due until paid**,** the delinquent amount shall bear interest at the applicable federal judgment rate of interest per annum. If Broker is required to institute legal proceedings against Owner relating to payment of commissions earned, Broker shall be entitled to reasonable attorney's fees and costs.

14. Broker's commission shall be payable solely from the proceeds of sale of the Property and shall constitute an administrative expense of the bankruptcy estate. The Trustee shall have no personal liability for payment of commissions under this Agreement. In the event the Property is sold, the commission shall be paid at closing from the sale proceeds, subject to Bankruptcy Court approval of the sale and the commission amount.

15. This Agreement constitutes the entire agreement between Owner and Broker and supersedes all prior discussions, negotiations and agreements, whether oral or written. No amendment, alteration, cancellation or withdrawal of this Agreement shall be valid or binding unless made in writing and signed by both Owner and Broker. This Agreement shall be binding upon, and shall benefit, the heirs, successors and assignees of the parties. In the event any clause, provision, paragraph or term of this Agreement shall be deemed to be

unenforceable, or void based on any controlling state or federal law, the remaining provisions hereof, and each part, shall remain unaffected and shall continue in full force and effect. This agreement may be executed in counterparts each which shall be considered an original. Notwithstanding anything herein to the contrary, Owner is acting solely in its capacity as the duly appointed Chapter 7 Trustee of the bankruptcy estate of DM & KC, LLC, and not in any individual capacity. The Trustee shall have no personal liability whatsoever under this Agreement. All obligations of the Owner hereunder are obligations solely of the bankruptcy estate and are subject to the provisions of the Bankruptcy Code and orders of the Bankruptcy Court. This Agreement shall terminate automatically upon the closing of the Bankruptcy Case without further action by either party.

16. Owner authorizes Broker to discuss Owner's motivation related to the Property with prospective buyers.

17. Broker does not assume any responsibility or obligation regarding the Property, including, but not limited to, any responsibility for maintenance, repair, operations and/or security of the Property.

18. Owner acknowledges that Broker is a brokerage firm, and that in some cases it may also represent prospective buyers interested in the Property. Owner desires that the Property be presented to such persons or entities. Owner agrees and understands that in the event of a prospective transaction involving Owner and another person or entity represented by Broker, Broker may designate one or more licensees employed by Broker to act as Owner's exclusive transaction broker, and one or more other licensees to act as the other party's exclusive designated representative in the transaction. Neither designated representative may disclose the confidential information of their principal to the other designated representative or principal.

19. If property is located outside of Bernalillo or Sandoval County, New Mexico, then Owner shall reimbursement Broker for cost of property signage.

20. . Owner acknowledges that Broker is not a law firm and its agents and brokers are not licensed attorneys. Broker, its agents and brokers do not provide any legal advice to Owners. All Owners are encouraged to retain their own real estate attorney.

The undersigned Owner hereby acknowledges receipt of a copy of this Agreement, which includes Exhibit A "Property" and NM Broker Duties as an attachment.

ACCEPTED:

**BROKER:**
**King Capital Commercial Real Estate, LLC**
Licensed NM Real Estate Broker

DocuSigned by:
By: Clayton King
458C272A4A1D403...
Clayton King

Its: Qualifying Broker (NM #20557)

Date: March 18, 2026

505-263-8531 (cell)
505-292-9607 (main office)
clayton@kingcapitalcre.com
4811A Hardware Dr. Ste 1
Albuquerque, NM 87109

**OWNER:**
**DM & KC, LLC**
**EDWARD A MAZEL, THE CHAPTER 7 TRUSTEE**

DocuSigned by:
By: Ed Mazel
990E507DAAE142A...
Ed A Mazel

Its: Trustee

Date: March 18, 2026

(505) 980-7410
ed@lawmazel.com
PO Box 21151
Albuquerque, NM 87154

**CONSULT YOUR ADVISORS** - This document has legal consequences. No representation or recommendation is made by Broker as to the legal or tax consequences of this Agreement or the transaction(s) which it contemplates. These are questions for your attorney and financial advisors.

**EXHIBIT A**

| | PARCEL ID | LEGAL DESCRIPTION |
|---|---|---|
| 1 | 2-106-088-483-532 | LOT 2B, REPLAT OF LOTS 2 & 3, ROLLIE SUBDIVISION UNIT 4, .39 ACS M/L |
| 2 | 2-106-088-473-517 | LOT 2-A REPLAT OF LOTS 2 & 3, ROLLIE SUB. UNIT 4, 1.95 ACSM/L |
| 3 | 2-106-088-435-520 | LOT 3-A, REPLAT OF LOTS 2 & 3, ROLLIE SUB. UNIT #4 CONT. 5.933 ACS M/L PLAT FILED 10/10/87 DOC 334365 08/24/07 CODE #2-106-08 |



# EXHIBIT "B"

Docusign Envelope ID: BF2C561B-962C-4BF6-A8F7-168804C3796A

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

DM & KC, LLC,
a New Mexico Limited Liability Company

Case No. 25-11224-j7
Chapter 7

Debtor.

**VERIFIED DISCLOSURE UNDER PENALTY OF PERJURY OF KING CAPITAL COMMERCIAL REAL ESTATE, LLC PURSUANT TO BANKRUPTCY RULE 2014**

King Capital Commercial Real Estate, LLC ("**King Capital**"), in connection with Edward A. Mazel, the Chapter 7 Trustee's (the "**Trustee**'s") *Application to Employ King Capital Commercial Real Estate, LLC as Real Estate Broker and Motion to Sell Real Property of the Estate Free and Clear of Liens, Claims, Interests, and Encumbrances,* in the above-captioned bankruptcy case, states:

1. To the best of the undersigned's knowledge, information, and belief, after making reasonable inquiry, King Capital has no connection with the Trustee, the Debtor, the Debtor's creditors, or any other party in interest in this case, or their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, except as follows:

(a) King Capital or its employees may subscribe to telephone and other utility services, and may purchase other goods and/or services, from vendors of the Debtor.

2. The terms and arrangement for employing and compensating King Capital, if the Court approves the Trustee's employment of King Capital as real estate broker in this case is summarized as follows:

(a) For King Capital's services, King Capital would charge the estate a

Docusign Envelope ID: BF2C561B-962C-4BF6-A8F7-168804C3796A

commission equal to six percent (6%) of the final purchase price of the Property (as defined in the Application), plus applicable New Mexico Gross Receipts Tax. The commission shall be payable from the gross proceeds of the sale at closing and shall constitute an administrative expense of the bankruptcy estate. King Capital is authorized to cooperate with and share its commission with other licensed real estate brokers representing prospective purchasers.

(b) In the event a cooperating buyer's broker is involved in a transaction, King Capital will share its commission with the cooperating broker. The total commission payable by the estate shall not exceed six percent (6%) of the final purchase price plus applicable Gross Receipts Tax.

(c) King Capital will incur costs in marketing the Property, including but not limited to signage, commercial listing services, advertising, property showings, and travel to and from Gallup, New Mexico. King Capital will bear all such marketing costs and will not seek reimbursement from the estate; the commission described above is inclusive of all marketing expenses.

(d) The proposed six percent (6%) commission is reasonable and customary for commercial real estate brokerage services in New Mexico and is consistent with the rates charged by commercial real estate brokers for properties of this size and type in the Gallup, New Mexico market.

(e) King Capital is a licensed New Mexico real estate brokerage specializing in commercial real estate. David N. Fite is a licensed New Mexico real estate broker associated with King Capital under Qualifying Broker Clayton King (NMREC License No. 20557). King Capital has experience marketing and selling commercial real estate in New Mexico, including properties in the Gallup market area.

Docusign Envelope ID: BF2C561B-962C-4BF6-A8F7-168804C3796A

3. Within one year prior to the commencement of this bankruptcy case, the Trustee has not paid King Capital any amounts in connection with this case.

4. King Capital has not shared or agreed to share with any other person or entity, other than with members or regular associates or employees of King Capital, any compensation paid or to be paid by the Trustee in or in connection with this bankruptcy case.

The undersigned verifies under penalty of perjury that the above declaration is true and correct within my personal knowledge.

KING CAPITAL COMMERCIAL REAL ESTATE, LLC

DocuSigned by:

By Clayton King March 19, 2026

458C272A4A1D403...

Clayton King, Qualifying Broker:
Clayton King (NM #20557)
4811A Hardware Dr. Ste 1
Albuquerque, NM 87109
(505) 292-9607 (office)
(505) 263-8531 (cell)
*Proposed Real Estate Broker for the Chapter 7 Trustee*

Executed in compliance with 28 U.S.C. § 1746 and in light of the holding in *Thomas v. United States Dep't of Energy*, 719 F.2d 342, 345 n.3 (10th Cir. 1983).